Griffin v. State.

GRIFFIN v. STATE.

*(Knoxville.  September Term, 1902.)*

1. **CRIMINAL LAW.** Abduction—Indictment—Sufficiency of.

In an indictment for the abduction of a female, it is sufficient if the offense is charged in the language of the statute, and it is not necessary to *aver* the chastity of the female alleged to have been abducted. (*Post, pp.* 19-22.)

Act cited and construed: Act of 1871, chap. 56, sec. 3; Code (S) sec. 6462.

Cases cited: Wilson *v.* State, 103 Tenn., 87; Jenkins *v.* State, 15 Lea, 674; Scruggs *v.* State, 90 Tenn., 82.

2. **SAME.** Same. Same. No duplicity in averring "taking" to have been for "purpose of prostitution and concubinage."

Where an act or offense may be committed by different means or with different intents, the indictment is not bad for duplicity in charging in one count the defendant's intentions and purposes in the *conjunctive form* when the statute enumerates the different purposes or intents in the disjunctive; so in an indictment for abduction charging the taking to have been for the "purpose of prostitution *and* concubinage," the act or offense complained of in the abduction and the two intents or purposes charged are in the nature of character elements or qualities one or both of which may be present in the mind of the defendant, and proof of *either purpose* wlil support the indictment. (*Post, pp.* 22-31.)

Code cited and construed: Sections 6462, 7084, 7085, 7086 (Shannon).

Cases cited and approved: State *v.* Ailey, 3 Heisk., 8; Cornell *v.* State, 7 Bax., 530; People *v.* Parshall, 6 Parker, Crim.

Griffin v. State.

Rep., 129; State *v.* Phipps, 64 N. W., 411; State *v.* Carr, 6 Oregon, 133; State *v.* Murphy, 47 Mo., 274; State *v.* Fitzsimmons, 30 Mo., 236; Crain *v.* U. S., 162 U. S., 625.

Cases cited and distinguished: Whiteside *v.* State, 4 Cold., 175; Tucker *v.* State, 8 Lea, 633.

**3. SAME. Same. Elopement with consent of female no defense.**

The court below did not err in refusing, at the request of defendant, to charge that if he eloped with the female at her own request and without any active persuasion on his part he would not be guilty. Such is not the law, and the request was properly refused. (*Post, pp.* 31-32.)

Case cited and approved: Reg. v. Biswell, 2 Cox. Cr. Cas., 279.

**4. SAME. Same. Burden of proof as to chastity.**

Upon a trial under an indictment for abduction the burden of proof is not on the State to show the female chaste, but unchastity is matter of defense. (*Post, pp.* 32-34.)

**5. SAME. Same. Same. Reasonable doubt as to chastity.**

The defendant may discharge the burden on him of showing the unchastity of the female by introducing enough proof to generate a reasonable doubt as to her chastity or chaste living. (*Post, pp.* 32-34.)

**6. JUDGMENT OF COURT. Presumption in favor of lawful action of judge.**

When the record is silent as to the presence or absence of defendant when the court pronounced the judgment of the law on him and nothing to indicate his absence, except the mere failure of the entry to show affirmatively that he was present, the supreme court will presume that the circuit judge did his duty in such matter in the absence of an affirmative showing to the contrary. (*Post, p.* 34.)

**7. SAME. Erroneous judgment as to infamy corrected in supreme court.**

When the trial judge included in the judgment of the court a sentence of infamy when the crime for which the defendant was convicted does not carry with it a judgment of

Griffin v. State.

infamy, it is error, but not reversible error and the supreme court will correct the judgment of the court below, and, by excluding the sentence of infamy, pronounce such judgment as the court below should have rendered.  (*Post, pp.* 34-35.)

Cases cited and approved:    Foster *v.* State, 9 Bax., 353-354; Sword *v.* State, 5 Hump., 101; Johnson *v.* City of Chattanooga, 97 Tenn., 247.

FROM JEFFERSON.

Appeal in error from the Circuit Court of Jefferson County.  W. R. HICKS, Judge.

W. O. MIMS, W. H. JONES, W. H. HUFF, for Griffin.

CHARLES T. CATES, JR., Attorney-General, for State.

MR. JUSTICE NEIL delivered the opinion of the Court.

There is no error in the judgment of the court below, and it must be affirmed.  We have examined all the grounds assigned for reversal, and find none of them well taken.  They are as follows:

1. That the indictment fails to aver the chastity of the female alleged to have been abducted.  The statute reads: "Any person who takes any female from her father, mother, guardian, or other person having the legal charge of her, without his or her consent, for the purpose of prostitution or concubi-

nage, shall, upon conviction, be imprisoned in the penitentiary not less than ten nor more than twenty-one years." Shannon's Code, section 6462. The statute contains no provision concerning the chastity of the female. In *Jenkins* v. *State,* 15 Lea, 674, to which counsel for the prisoner have cited us, it was held that the defendant could not be convicted on a state of facts showing that before the alleged abduction the female was a person of "notorious bad character, and had the character of and was a public prostitute," and her mother knew of her leaving with the defendant the day she left, or the day after, made no effort to recover her, and offered to quit the prosecution for one hundred dollars. In *Scruggs* v. *State,* 90 Tenn., 82 (15 S. W., 1074), it was held that it was no bar to a conviction that prior to the abduction the female had been "guilty of improper and familiar conduct with some other man or men, provided at the time" (of the abduction) "she was living a chaste and virtuous life with her father and mother, and under their care and control, and in their custody." This was contained in the charge of the circuit judge, and was said by him in respect of evidence to the effect that the female on one or more occasions prior to the abduction had had sexual intercourse with the defendant and one or two other men. This charge was sustained by the court as correct. It was held in that case to be sufficient if the abducted female was "at

the time living a chaste and virtuous life." In *South v. State,* 97 Tenn., 496 (37 S. W., 210), it was held to be no bar to conviction that the female had, prior to her abduction, on one or more occasions, indulged in sexual intercourse with the defendant, if she was otherwise living a chaste and virtuous life. In Whart. Cr. Law, section 2672, it is said that if, since prior acts of unchastity, the female has reformed, she reacquires the protection of the statute. "For," says the author, "it would be inhuman and perilous to assume that women once fallen, but who have reformed, are to be afterwards exposed, without redress, to a seducer's arts. The policy of the law in such cases is to reclaim and guard."

We do not find, in either of our cases cited, any indication that the indictment must aver the chastity of the female. The question arose in these cases either upon the charge of the court, or upon the sufficiency of the testimony; and we are of opinion it may properly arise at that stage of the case, but not on the sufficiency of the indictment. The indictment in the present case is in the language of the statute, and that is, in general, sufficient. *Wilson v. State,* 103 Tenn., 87 (52 S. W., 869) ; 1 Whart. Cr. Law, sec. 364.

We are cited in defendant's brief to several authorities, to which we have not access, as holding a contrary view. Two of the citations referred to, to which we have access (2 Whart. Cr. Law, section 1757; 1 Am.

& Eng. Enc. Law [2d Ed.], p. 178), we have examined, and find they do not sustain the defendant's contention. They do not refer to the form of the indictment, but only to the testimony. However, regardless of these authorities, we think, as the statute describes a complete offense, it is sufficient to charge the offense in the indictment in the language of the statute. The qualification introduced into the statute by judicial construction in the cases referred to at most could only be in the nature of an exception, to the effect that the defendant could not be held guilty if the female was living an unchaste life at the time of the abduction, and this would be merely a matter of defense, to be shown by the accused. For the principle as referring to negative exceptions in statute, see *Villines* v. *State,* 96 Tenn., 141 (33 S. W., 922); *State* v. *Jackson,* 1 Lea, 680, and *Lambeth* v. *State,* 3 Shannon's Tenn. Cas., 754.

2. It is next objected that the indictment is bad because it avers that the defendant "did take," etc., the said female from the custody of her mother, etc., "for the unlawful and felonious purpose of prostitution and concubinage." It is said that two offenses are thus charged in the same count, and it is bad for duplicity. In Whart. Cr. Law, section 294, it is said that, where a statute distinctively enumerates the offenses or the intent necessary to constitute the offenses disjunctively, they can not be stated disjunctively in the indictment, "but to state them

Griffin v. State.

conjunctively when they are not repugnant is always allowable." And in *Cornell* v. *State*, 7 Baxt., 520, it was held that, when two offenses are charged in the indictment, but as parts of the same transaction, and as one.offense, proof of either offense so charged would be sufficient to support a conviction, and the indictment would be good. So, in *State* v. *Ailey,* 3 Heisk., 8, an indictment was held good which charged that the defendant did unlawfully, maliciously, and feloniously "slit, cut off and bite off the ear of John Tarwater," etc. The court said that, while each of the acts of slitting, cutting and biting off might be committed separately, and be indictable, yet it could not be said that they might not be committed as parts of the same transaction, so as to constitute one offense; nor that, if they were jointly charged, the proof of either would not be sufficient to support the indictment; that the defendant could not be embarrassed in his defense, nor could the court in pronouncing judgment, as where felonies of a different nature, or distinct felonies and misdemeanors, are embraced in the same indictment.

In *Whiteside* v. *State,* 4 Cold., 175, 183, the indictment charged the defendant with "feloniously, willfully and maliciously burning a certain house or outhouse of one George Kinney." The court said the language of the statute was in the alternative or disjunctive, and created, therefore, two offenses. "It follows, therefore," said the court, "that the charge

in the indictment, being in the alternative, by all the authorities, is void," etc. Commenting on this case in *State* v. *Ailey,* supra, the court said (page 10) : "This view of the case is not in conflict with the opinion in *Whiteside* v. *State,* 4 Cold., 182, 183. There the charge was in the disjunctive, but here the various acts are connected by the copulative conjunction." The same principle is illustrated in the following cases: Under the statute in New York making it an offense to take a female for the purpose of prostitution, concubinage, or marriage it was held that an indictment charging a taking for the purpose of "prostitution, concubinage *and* marriage," instead of alleging a taking for the purpose in the alternative, would justify a conviction for a taking for either of these purposes. *People* v. *Parshall,* 6 Parker, Cr. R., 129, cited in note to Cycl. Law & Proc., p. 157. The Iowa Code (section 3985) provides that "if any person destroy, injure or secrete any goods, . . . he shall be punished," etc. Under this section it was held that an indictment charging that defendants did injure and secrete certain property was not bad for duplicity. *State* v. *Phipps,* 64 N. W., 411. In Oregon it is held that, where the statute makes the commission of different acts a crime, and which acts are stated disjunctively in the statute, the indictment may, as a general rule, embrace the whole in a single count, but it must use the conjunctive "and" where "or" occurs in the statute, else it will be defective for

uncertainty. *State* v. *Carr,* 6 Or., 133; *State* v. *Bergman,* Id., 341.   In Missouri it is held that, where a statute enumerates offenses, or the intent necessary to constitute them, disjunctively, the indictment must charge them conjunctively when the acts are not repugnant (*State* v. *Flint,* 62 Mo., 393) ; and the defendant under such an indictment may be convicted of either (*State* v. *McCollum,* 44 Mo., 343). Again, in the same State it is held that when a statute in one clause forbids several things, or creates, in the alternative, several offenses, which are not repugnant in their nature or their penalty, the cause is treated in criminal pleading as though it created but one offense; and all of the offenses may be united conjunctively in one count, and such count is sustained by proof of any one of the offenses charged.  *State* v. *Murphy,* 47 Mo., 274; *State* v. *Fitzsimmons,* 30 Mo., 236.   The same rule is laid down in the tenth volume of the Encyclopedia of Pleading and Practice in the following language: "When a statute enumerates several acts in the alternative, the doing of any of which is subjected to the same punishment, all of said acts may be charged cumulatively as one offense.   And where the statute provides in the alternative several means by which the offenses may be committed, or where the intent or purpose is set out in several aspects disjunctively, they may all be charged in setting out one and the same offense.   But the rule has been limited in its application to cases where

the offenses created in the statute are not repugnant, either in themselves or in the punishment therefor." Pages 536, 538. In a note to the text all the foregoing cases are cited, and other cases from many States. Among others cited is found *Crain* v. *United States*, 162 U. S., 625 (16 Sup. Ct., 952; 40 L. Ed., 1097). We have examined this case, and it fully sustains the rule. The same rule is inferentially recognized in our statutes.

In an article of Shannon's Code, entitled "Forms and Requisites of Indictments," the following sections occur:

"Sec. 7084. An offense may be charged in an indictment in different forms, so as to meet the evidence in the case; and where it may have been committed by different means, the means may be alleged in the same count, in the alternative.

"Sec. 7085. On an indictment for a public offense admitting of different degrees, the defendant may be convicted of such offense, or any degree lower than that charged in form in such indictment.

"Sec. 7086. So, also, where the intent with which, the mode in, or the means by which, an act is done, are essential to the commission of the offense, and such offense may be committed with different intents, in different modes, or by different means, if the jury are satisfied that the act was committed with one of the intents, in one of the modes, or by either of the means charged, they shall convict, although un-

certain as to which of the intents charged existed, or in which mode, or by which of the means charged, such act was committed."

Section 7086 shows that, where an act may be done with several intents, the proof of the act and of either intent will be sufficient to sustain the indictment; thus treating the offenses indicated by the act as combined with the several intents as one, instead of several; and, taking the caption of the article into consideration, authorizes the draftsman of the indictment to do the same, and justifies. the putting of the act charged, with all of its intents, in the conjunctive form, in one count.

Section 7084 authorizes the means by which a crime may have been committed, where it may have been committed by different means, to be alleged in the same count, in the disjunctive; and very often this may be necessary, because in some instances different means may be found so opposed in their several natures as to make the conjunctive form admissible. But at the same time this form of pleading does not indicate so much a different offense as an uncertainty in the mind of the pleader as to the special means by which the crime was committed. This special provision in respect of the means by which a crime may be committed does not negative the use of the conjunctive form where that is the more appropriate, nor impair the proper deduction to be drawn, as above indicated, from section 7086,

in respect of the existence of several intents accompanying an act which is made the subject of an indictment.   Again, while it is undoubtedly true that the first clause of section 7084 refers to and sanctions the common practice of the use of several counts for the purpose of charging the same offense in different forms so as to meet the evidence, yet, as above stated, the last clause sets forth, in respect of the means by which a crime may be committed, what a single count may contain.   Following out this thought, and carrying it forward, the next section (7085) has reference to the convictions that may be had under a single charge when the crime admits of degrees; and the next section (7086) treats of the singleness of the criminal act, whatever may be the means by which or the mode in which it may have been committed, and maintains for it the same individuality, although it (the act) may be accompanied by several intents, and authorizes a conviction although the special intent prompting it—that is, whether the one or the other of certain intents necessary to constitute the act a crime—may be uncertain.   The same result follows when we unite sections 7085 and 7086 by the connecting word "so," appearing as the first word in the latter section.   Reading the two together, the conclusion to be drawn is as follows: That whereas on an indictment for a public offense admitting of different degrees each higher degree includes every lower one, and the defendant

Griffin v. State.

may be convicted of the offense charged in terms, or of any lower degree contained therein, "so," in like manner, in that class of cases wherein the intent with which, the mode in which, or the means by which the act is done are essential to the commission of the offense, and such offense may be committed with different intents, in different modes, or by different means, there may be a conviction, if the jury are satisfied that the act was committed with one of the intents, in one of the modes, or by either of the means charged, although uncertain as to which of the intents charged existed, or in which mode, or by which of the means charged such act was committed.

So, from whatsoever available standpoint the sections referred to be examined, the necessary conclusion to be drawn is that the criminal act is a single thing, whatever its concomitants may be in respect of means, mode, or intent; and if so single, it may be made the subject of a single count.

A cognate case, though not depending upon the sections of the Code referred to, nor upon the rule announced as to disjunctive statements in the statute and conjunctive statements in the indictment, is that wherein by one act a man produces several distinct effects; as where by one shot he kills two or more men, or burns a house and its contents, or steals several articles of personal property from the same owner. In all of these cases the crime is treat-

ed as a single thing (see the following cases: *Fowler* v. *State,* 3 Heisk., 154; *Kelly* v. *State,* 7 Baxt., 323; *State* v. *Williams,* 10 Humph., 101), and it is clear that the whole transaction may be embraced in one count. The principle underlying both phases of the question seems to be the same; that is, in general, where a single act is complained of, it may be treated as one crime, although it may be accomplished by several different means, or in several different modes, or may have been prompted by several different intents, or may have several different, direct and immediately connected effects.

So, in the case before the court, the act complained of is the abduction, and the two intents are in the nature of character elements or qualities, both of which may be present in the mind of the accused, to be successively put in actual operation, or only one of them may be present, when the act of abduction is committed. It has long been the practice in this State to unite in the same count of an indictment several phases of the same misdemeanor, under the rules of pleading above referred to. See *State* v. *Jopling,* 10 Humph., 418; *State* v. *Irvine,* 3 Heisk., 155; *State* v. *Callicutt,* 1 Lea, 714; *State* v. *Lindsey,* 2 Shannon's Tenn. Cas., 501. In one of our cases (*State* v. *Ferriss,* 3 Lea, 700, 706), the judge delivering the opinion in that case uttered a *dictum* to the effect that these cases were "exceptional, and not in harmony with the general rule that but one offense

Griffin v. State.

should be charged in the same count of an indictment," and declined to apply them to a state of facts of a very peculiar nature. That case was well decided on its own facts, but does not impeach the rule of pleading which is the subject of the present discussion.

We are referred by defendant's counsel to the case of *Tucker* v. *State,* 8 Lea, 633, as indicating that in an indictment for abduction the two statutory intents must be stated in different counts. That case is authority only for the proposition that the two intents, respectively, *may* be pleaded in different counts, not that they *must* be. In that case the rule of pleading here discussed was not referred to or considered, and the case is not available as an authority against the rule.

3. It is said that the judge's charge in the court below was, as a whole, unintelligible, and certainly misled the jury. We have twice read the charge, and find no fault in it of which the defendant could complain. In some respects it was more favorable to him than the law authorizes. It was not unintelligible, but of clear and easy comprehension, and could not have misled the jury. It might have been prepared in a more orderly and systematic manner, but its lack of finish and of proper literary structure is no valid objection to it. It contained every matter of substance required for the guidance of the jury.

4. It is said the circuit judge erred in failing to

give in charge to the jury the defendant's third request. The substance of this request was that the defendant would not be guilty if he eloped with the girl at her own request, and without any active persuasion on his part. This request does not state the law, and was rightly refused. Am. & Eng. Enc. Law, p. 178, and cases cited in note 6; 1 Cycl. Law & Proc., p. 148, note 49. In one of the cases cited— *Reg.* v. *Biswell,* 2 Cox, Cr. Cas., 279—it was held that the defendant was not exonerated, although the girl proposed to him that they should go away together, and at the same time made the statement that she intended to leave her father's home for good.

5. It is next insisted that the circuit judge erred in refusing to charge the jury as set out in defendant's fourth request. This request contained, in substance, the same matter appearing in the third request, with the addition that the abduction must have been for the purpose defined in the statute, and that the jury must find these facts beyond a reasonable doubt. This request was rightly declined, because it contained the erroneous matter set forth in the third request. The circuit judge had already charged with sufficient fullness upon the subject of the statutory purpose and upon reasonable doubt.

6. It is next insisted that the circuit judge erred in refusing to charge the jury pursuant to defendant's seventh request. This request was as follows: "The burden of proof is upon the State to show that

Griffin v. State.

the said Paralee was a chaste and virtuous female, leading a chaste and virtuous life, at the time of the alleged abduction, and that the abduction or going away was for the purpose forbidden by the statute, and this burden must be discharged by such evidence as satisfies your minds beyond a reasonable doubt, and until this is done you will not be authorized to convict the defendant, and if you should have a reasonable doubt as to the virtue and chastity of the said Paralee you should acquit."

The circuit judge charged sufficiently upon the point that the jury must be satisfied beyond a reasonable doubt that the female was leading a chaste and virtuous life at the time of the abduction, but he did not charge that the burden of proof was upon the State to show the fact. In the first place, we do not think the burden of proof is upon the State, but, on the contrary, as intimated in what we said upon the first point, the want of chastity in the female, or the fact that she was not living a chaste and virtuous life at the time of her abduction, is a matter of defense to be shown by the accused; but he may discharge the burden so cast upon him by the law by introducing enough testimony to generate a reasonable doubt of the fact of such chastity or chaste living. The State discharges the initial burden by showing that the female named in the indictment as the person abducted has been taken by the defendant "from her father, mother, guardian, or other per-

son having the legal charge of her, without his or her consent, for the purpose of prostitution or concubinage," as laid down in the statute. In the second place, if the rule were otherwise, there would be no reversible error in the failure of the circuit judge to charge the request now under examination, because, inasmuch as testimony had been introduced upon the question of the chastity of the female on both sides, and the measure was not the mere weight of the testimony, but as to whether there was a reasonable doubt of the chaste life of the female at the time of her abduction, and the circuit judge had fully and sufficiently charged the jury upon that point, the error, if any, was innocuous.

7. It is said the court below erred in pronouncing sentence upon the defendant during his absence. No such question was made in the court below, and there is nothing in the record to indicate his absence, except the mere failure of the entry to affirmatively show that he was present. This is not sufficient to support the conclusion. This court will presume that the circuit judge did his duty in such matter, in the absence of an affirmative showing to the contrary.

8. It is said the circuit judge erred in including as part of the judgment a sentence of infamy. The crime of which the defendant was convicted does not carry with it a judgment of infamy, because not included in the list of such crimes as set out in Shan-

Griffin v. State.

non's Code, sec. 7199; hence it was error to include a judgment of infamy in the sentence in the present case.    But the error is not a reversible one.    The judgment can be corrected here so as to exclude that part of it, and this will be done.    This was the course taken in *Foster* v. *State,* 9 Baxt., 353, 354. There the judgment was modified so as to expunge the element of infamy, and then affirmed.    See, also as to the power of the court to modify the judgments of inferior courts in criminal cases, *Sword* v. *State,* 5 Humph., 101; and in a *quasi* criminal case, *Johnson* v. *City of Chattanooga,* 97 Tenn., 247 (36 S. W., 1092).

9, 10.    It is insisted that the verdict is not supported by the evidence.    We have carefully read the testimony, and we are of the opinion that it does support the verdict.    We place no reliance upon the testimony of the witnesses Janie Brown and Mollie Snapp, who were introduced to show the unchaste character of the female in question.    One needs only to read these witnesses' testimony to be convinced that they are unworthy of credit.

Affirm the judgment.